UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JASMINE GRACE-LOUISE
EDWARDS,

               Plaintiff,

        -v-                                   5:18-CV-1287

TIM PENIX and CHRISTOPHER
MONTGOMERY,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                       OF COUNSEL:

JASMINE GRACE-LOUISE EDWARDS
Plaintiff, Pro Se
335 Valley Drive
Syracuse, NY 13207

HON. LETITIA JAMES                         MELISSA A. LATINO, ESQ.
Attorney General of the State of New York    Ass't Attorney General
Attorneys for Defendants
The Capitol
Albany, NY 12224

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

On November 2, 2018, pro se plaintiff Jasmine Grace-Louise Edwards ("Edwards" or

"plaintiff"), a graduate of a certificate program at the State University of New York's ("SUNY")

Educational Opportunity Center ("EOC") in Syracuse, New York, filed this action against

defendants Christopher Montgomery ("Montgomery"), an EOC staff assistant, and Tim Penix ("Penix"), Vice President of the Syracuse EOC.

According to Edwards's complaint, Montgomery and Penix (collectively "defendants") violated her rights under the First and Fourteenth Amendments to the U.S. Constitution while she was enrolled in the EOC's clinical health training program. Plaintiff accompanied her pleading with a motion for leave to proceed *in forma pauperis* ("IFP"); that is, for permission to continue this action without pre-paying the filing fees that are otherwise required.

On December 4, 2018, U.S. Magistrate Judge Andrew T. Baxter granted Edwards's request for IFP status, conducted an initial review of plaintiff's complaint in accordance with 28 U.S.C. § 1915, and ordered the issuance of summonses for service of process upon the two named defendants. *Edwards v. Penix*, 2018 WL 7290827 (N.D.N.Y. Dec. 4, 2018) (Baxter, M.J.).

On February 14, 2019, defendants moved under Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss Edwards's complaint in its entirety. According to defendants' motion, plaintiff has failed to plead any plausible violations of her federal constitutional rights. The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.

## II. **BACKGROUND**

The following facts are taken from Edwards's complaint and supplemented[1] by her response in opposition to defendants' motion. These facts are assumed true for the purpose of resolving defendants' motion to dismiss.

In late 2016, Edwards signed up to participate in the EOC's clinical health training program. Compl. at 4. SUNY operates EOCs across the state as a free service to adult learners who meet certain eligibility requirements. *See* http://www.suny.edu/features/eoc/.

Edwards alleges the program she signed up for was originally slated to run from November 28, 2016 through December 9, 2016, with a week of job interviews to follow thereafter. Pl.'s Opp'n, Dk. No. 5-1, 8. However, the first day of the program was cancelled because of a snowstorm. *Id*. Pl.'s Opp'n at 8.

Edwards alleges that Montgomery, an EOC staff assistant, called to tell her "that the class would resume on the following day and lead into the following week." Pl.'s Opp'n at 8. Plaintiff also alleges that Penix's assistant instructed plaintiff to "leave a message with her" about Montgomery's "harassment." *Id.* According to plaintiff, Penix returned her call but the "line disconnected" and he did not pick up when she called him back.[2] *Id*.

On December 6, 2016, and again on December 12, 2016, Montgomery allegedly prevented Edwards from participating in class. Compl. at 2. According to plaintiff, Montgomery asked her "to stay after class for a meeting with him and another employee." *Id*.

---

[1] Plaintiff included additional facts in her opposition memorandum that will must also be considered in determining whether she has stated any plausible claims. *See, e.g.*, *Boguslavsky v. Kaplan*, 159 F.3d 715, 719 (2d Cir. 1998) ("[C]ourts may look to submissions beyond the complaint to determine what claims are presented by an uncounseled party.").

[2] Edwards does not explain what "harassment" was at issue here, except for perhaps her subjective belief that Montgomery's telephone call about class being cancelled might have been inappropriate.

at 3.  At that time, Montgomery told plaintiff she would be released from the training program because he believed she was passing notes to other students.[3]  *Id*.  Plaintiff offered to show Montgomery the notes at issue but he refused to look at them.  *Id*.

Edwards challenged her removal from the program, seeking out and receiving a meeting with the Syracuse EOC's Director of Student Services (the "EOC Director").  Compl. at 4.  According to plaintiff, the EOC Director reversed Montgomery's decision but told plaintiff she would have to ask for employer interviews separately from the rest of the class.  *Id*.  Montgomery accepted the Director's decision, but stated that he would not be giving her a "referral" from his program.  *Id*.

Thereafter, Montgomery gave to Edwards a certificate signifying her successful completion of the training program.  Compl. at 4, 8-9.  However, during one of plaintiff's later employer interviews Montgomery "interrupted" the meeting and directed his "security guard" to remove plaintiff from the building.  *Id*. at 4.  Plaintiff alleges that this amounts to a violation of her constitutional rights, and asserts that Penix, as Vice President, should have done more to provide "fair procedures" at the EOC.  Compl. at 6.  Plaintiff seeks "130 million dollars" in damages.  *Id*.

## III. LEGAL STANDARD

"To survive a Rule 12(b)(6) motion to dismiss, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'"  *Ginsburg v. City of Ithaca*, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

---

[3] Plaintiff alleges Montgomery also told her she "did not demonstrate moduels [*sic*] during class performances."  Compl. at 3.  The complaint does not elaborate on this topic.  *See id*.

(2007)). "Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of his claims." *Id*.

"When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor." *Faiaz v. Colgate Univ.*, 64 F. Supp. 3d 336, 344 (N.D.N.Y. 2014) (Baxter, M.J.). In making this determination, a court generally confines itself to the "facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (citation omitted).

## IV. **DISCUSSION**

When a plaintiff is proceeding without the benefit of an attorney, the complaint "must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted); *see also Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012) ("A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (citation omitted)).

"This is particularly so when the *pro se* plaintiff alleges that [her] civil rights have been violated." *Ahlers*, 684 F.3d at 60. Importantly, however, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Leon v. Rockland Psychiatric Ctr.*, 232 F. Supp. 3d 420, 428 (S.D.N.Y. 2017) (quoting *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)); *see also Ruggiero v. City of Cortland*, 2019 WL 1978623, at *3 (N.D.N.Y. May 3, 2019) ("Although pro se

(2007)). "Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of his claims." *Id*.

"When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor." *Faiaz v. Colgate Univ.*, 64 F. Supp. 3d 336, 344 (N.D.N.Y. 2014) (Baxter, M.J.). In making this determination, a court generally confines itself to the "facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (citation omitted).

## IV. **DISCUSSION**

When a plaintiff is proceeding without the benefit of an attorney, the complaint "must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted); *see also Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012) ("A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (citation omitted)).

"This is particularly so when the *pro se* plaintiff alleges that [her] civil rights have been violated." *Ahlers*, 684 F.3d at 60. Importantly, however, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Leon v. Rockland Psychiatric Ctr.*, 232 F. Supp. 3d 420, 428 (S.D.N.Y. 2017) (quoting *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)); *see also Ruggiero v. City of Cortland*, 2019 WL 1978623, at *3 (N.D.N.Y. May 3, 2019) ("Although pro se

plaintiffs are entitled to a significant measure of latitude when it comes to pleading and in matters of procedure, the solicitude afforded to a party who chooses to proceed without the benefit of a lawyer is not boundless.").

Liberally construed, Edwards seeks money damages under 42 U.S.C. § 1983 for violations of her constitutional rights. In particular, plaintiff alleges Montgomery violated her rights to "equality and rights to education and labor" when he (1) removed her from the program for passing notes; and later, following her reinstatement, when he (2) directed a security guard to remove her from an interview. Plaintiff further alleges Montgomery violated her First Amendment rights by restricting her "academic freedom of expression." Finally, plaintiff alleges Penix violated her rights by failing to provide "fair procedures, causing deprivation of life."

"The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Kisembo v. NYS Office of Children & Family Servs.*, 285 F. Supp. 3d 509, 518 (N.D.N.Y. 2018) (quoting *Wyatt v. Cole*, 504 U.S. 158, 161 (1992)).

However, "[s]ection 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Kisembo*, 285 F. Supp. 3d at 518 (quoting *Sykes v. James*, 13 F.3d 515, 519 (2d Cir.1993)). Thus, a § 1983 claim requires a plaintiff to show (1) the deprivation of a right, privilege, or immunity secured by the Constitution and its laws by (2) a person acting under the color of state law. *See* 42 U.S.C. § 1983.

## A. <u>Constitutional Due Process</u>[4]

Edwards alleges Montgomery violated her due process rights to "equality and rights to education and labor" when he (1) removed her for passing notes; and later, following her reinstatement, by (2) directing a security guard to remove her from the job interview. Plaintiff further alleges Penix violated her due process rights by failing to provide "fair procedures, causing deprivation of life."

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property without due process of law, and 'those who seek to invoke its procedural protection must establish that one of these interests is at stake.'" *Horton v. Westling*, 284 F. Supp. 3d 213, 219 (N.D.N.Y. 2018) (D'Agostino, J.) (quoting *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016)), *aff'd*, 765 F. App'x 531 (2d Cir. 2019) (summary order). "'[S]tandard analysis under that provision proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient.'" *Id*.

Importantly, though, "[t]he Constitution does not create property interests." *Edwards*, 2018 WL 7290827, at *3 (citation omitted). Rather, "[p]roperty interests are created, and their dimensions defined, by existing rules or understandings that arise from an independent source such as state law." *Id*. In a similar vein, "[l]iberty interests may arise directly from the Due Process Clause itself or from statutes, regulations, or policies enacted by the state." *Victory*, 814 F.3d at 59.

---

[4] Plaintiff asserts this claim under the Fifth Amendment, but as Judge Baxter noted it is the Fourteenth Amendment that governs the conduct of state actors. *Edwards*, 2018 WL 7290827, at *3.

Edwards's removal from the training program satisfies step one of this two-step process. Under New York law, "an individual has a constitutionally protected interest in her dealings with a 'state-run college' because New York has recognized 'an implied contract between [a public college] and its students.'" *Edwards*, 2018 WL 7290827, at *3 (quoting *Marino v. City Univ. of N.Y.*, 18 F. Supp. 3d 320, 337 (E.D.N.Y. 2014)); *but see Scaccia v. Stamp*, 700 F. Supp. 2d 219, 236 (N.D.N.Y. 2010) (Mordue, J.) (expressing skepticism about whether an adult plaintiff has a protected property interest in "continued enrollment in a graduate program"), *aff'd*, 447 F. App'x 267 (2d Cir. 2012).

"The essence of the implied contract is that an academic institution must act in good faith in its dealings with its students." *Marino*, 18 F. Supp. 3d at 337 (quoting *Olsson v. Bd. of Higher Ed.*, 49 N.Y.2d 408, 414 (N.Y. 1980)). "Such an implied contract, recognized under state law, provides the basis for a property interest that would be entitled to constitutional protection." *Id*. (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)).

Even so, Edwards has failed to plausibly allege that her temporary removal from the program caused her to suffer under any constitutionally deficient procedure. Although plaintiff alleges Montgomery initially removed her from the program for "passing notes," plaintiff elsewhere asserts she successfully appealed this adverse determination to the Director of Student Services, who reversed the decision and reinstated plaintiff to the program. *See, e.g.*, *Horton*, 284 F. Supp. 3d at 220 ("[P]ost-discipline due process provides sufficient due process to satisfy the requirements of the Fourteenth Amendment."). Indeed, plaintiff alleges Montgomery gave her a signed certificate after she successfully completed the course, and has attached a copy of this certificate to her complaint. Compl. 4, 8-9.

Edwards's other due process claim is based on the allegation that Montgomery directed a security guard to remove her from an employer interview *after* she completed the certificate program. As Judge Baxter observed, there is no *procedural* due process right to participate in an employer interview. *Edwards*, 2018 WL 7290827, at 4. However, under certain circumstances courts have recognized a *substantive* due process right to pursue a chosen career. *Id*. (citing *Marino*, 18 F. Supp. 3d at 339). Importantly, though, "[t]hose circumstances occur when the defendant has denied the plaintiff all opportunities to practice in her chosen profession." *Id*.

Edwards's allegation that she was denied a single job interview on a single day do not satisfy the contours of this test.[5] *Marino*, 18 F. Supp. 3d at 339 ("While a person's right to pursue the profession of his choice is recognized as a constitutionally protected liberty interest, courts in the Second Circuit have consistently held one must have no ability to practice one's profession at all in order to state a claim for deprivation of a liberty interest."). In any event, Montgomery's conduct is not the sort of "conscience-shocking" or "arbitrary" behavior that triggers the protections of substantive due process. *See, e.g.*, *Horton*, 284 F. Supp. 3d at 222.

Finally, Edwards has failed to allege that defendant Penix was "personally involved" in any of Montgomery's alleged misbehavior, or that Penix was on sufficient notice of either instance of alleged misconduct to give rise to a duty to take some corrective action. *Odom v. Matteo*, 772 F. Supp. 2d 337, 403 ("It is well-settled in this Circuit that personal involvement

---

[5] To the extent this allegation is construed as one grounded in *procedural* due process, Montgomery's alleged misconduct is the sort of random, unpredictable, and unauthorized act by a state employee for which a meaningful post-deprivation remedy, like an Article 78 proceeding in state court, would constitute sufficient procedural due process. *See, e.g.*, *Attallah v. N.Y. Coll. of Osteopathic Med.*, 94 F. Supp. 3d 448, 455 (E.D.N.Y. 2015) (discussing the doctrine).

of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").

Even assuming otherwise, Edwards has failed to plead a plausible due process claim against Montgomery and therefore Penix, who is alleged to occupy a supervisory role at the Syracuse EOC, cannot be held liable under § 1983, either. *Elek v. Inc. Vill. of Monroe*, 815 F. Supp. 2d 901, 806 (S.D.N.Y. 2011) ("Supervisory liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat superior."). Accordingly, plaintiff's due process claims must be dismissed.

## B. First Amendment

Edwards alleges Montgomery also violated her First Amendment rights by restricting her "academic freedom of expression." Plaintiff appears to argue that Montgomery acted impermissibly in attempting to discipline her for passing notes in class.

"The United States Supreme Court held that public school speech or expression that does not 'materially or substantially interfere with schoolwork or discipline' is constitutionally protected speech." *Morales v. New York*, 22 F. Supp. 3d 256, 275 (S.D.N.Y. 2014) (quoting *Tinker v. Des Moines*, 393 U.S. 503, 511-13 (1969)).

However, "[c]ourts recognize that the administrators should be given leeway to address any potential disruption before it manifests itself." *Morales*, 22 F. Supp. 3d at 275 (applying *Tinker* doctrine to a plaintiff's claim against SUNY college officials); *see also Doninger v. Niehoff*, 527 F.3d 41, 51 (2d Cir. 2008) ("[Plaintiff's] argument is misguided insofar as it implies that *Tinker* requires a showing of actual disruption to justify a restraint on student speech.").

- 10 -

In applying *Tinker*, the Second Circuit has held that "the relevant inquiry is whether the record . . . demonstrate[s] . . . facts which might reasonably have led school authorities to forecast substantial disruption of or material interference with school activities." *Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.*, 677 F.3d 109, 113 (2d Cir. 2012) (citation and internal quotation marks omitted). Importantly, "[t]he test is an objective one, focusing on the reasonableness of the school administration's response, not on the intent of the student." *Id*.

Edwards has failed to state a plausible claim under this body of law. As an initial matter, the only actual discipline about which plaintiff complains—her dismissal from the program—was by her own account immediately reversed by the Director. *Cf. Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 274 (2d Cir. 2011) (noting that a school administrator's "investigation itself is not disciplinary").

But even assuming *Tinker* applied, there is no indication that Montgomery, an EOC staff assistant whom Edwards alleges to be the training program director, acted in a *constitutionally* unreasonable manner by challenging Edwards's in-class note-passing or by attempting to discipline her for it. This is so regardless of plaintiff's claim that Montgomery refused her invitation to read the notes himself. *Wood v. Strickland*, 420 U.S. 308, 326 (1975) ("[I]t is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion.").

Nor can Edwards establish a violation of her First Amendment constitutional rights in connection with Montgomery's later alleged misconduct; that is, directing a security guard to

remove her from a job interview.⁶  "To plead a First Amendment retaliation claim a plaintiff must show:  (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury."  *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).

Liberally construed, Edwards's complaint satisfies the first element of this test, since her decision to appeal Montgomery's determination that she should be removed from the program is almost certainly protected by the First Amendment.  *See, e.g.*, *Odermatt v. N. Y. City Dep't of Educ.*, 694 F. App'x 842, 845 (2d Cir. 2017) (summary order) ("[A]lmost any speech is protected under the First Amendment.").

Edwards's complaint might also satisfy the third element of the test, since actually losing a job opportunity probably qualifies as "some injury" in light of more recent Second Circuit decisions clarifying this question.  *Dorsett*, 732 F.3d at 160 ("A plaintiff has standing if he can show *either* that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm.").

Even so, Edwards cannot plausibly establish causation between these events.  Of course, "[r]etaliatory intent is difficult to plead with specificity in a complaint."  *Perri v. Bloomberg*, 2012 WL 3307013, at *3 (E.D.N.Y. Aug. 13, 2012).  Therefore, "[a]t this stage of the proceedings, a 'reasonable inference' is all that is required."  *Estate of Smith v. Town of W. Hartford*, 186 F. Supp. 2d 146, 156 (D. Conn. 2002).

---

⁶  It is unclear whether plaintiff is actually pressing this theory, since her invocation of the First Amendment is more closely related to Montgomery's attempt at disciplining her for "expression."  Compl. at 5.

Edwards alleges that, after she completed the educational component of the program and received her certificate, Montgomery interrupted one of plaintiff's job interviews and directed a security guard to remove her from the building. However, plaintiff does nothing to connect these two events; at best, plaintiff's complaint establishes that these things followed each other in time.

But mere sequence alone does not plausibly establish causation, even at the motion-to-dismiss stage and even for a plaintiff proceeding *pro se*. Rather, a retaliation plaintiff is obligated to allege at least some fact or facts to circumstantially establish, at the very least, a tenuous causal relationship between the two events. *See, e.g.*, *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone."); *Richard v. Leclaire*, 2017 WL 4349381, at *5 (N.D.N.Y. Sept. 29, 2017) (Sannes, J.) ("In order to establish a causal connection at the pleadings stage, the allegations much be sufficient to support the inference that the speech played a substantial part in the adverse action."). Accordingly, plaintiff's First Amendment claim(s) will be dismissed.

### C. Leave to Amend

There remains the question of whether Edwards should be permitted an opportunity to amend her pleading. Generally speaking, "[a] pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (citation omitted). However, if the problems with a complaint are "substantive" rather than the result of an "inadequately or inartfully pleaded" complaint, an

opportunity to re-plead would be "futile" and "should be denied." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Often, a pro se plaintiff's opposition memorandum will shed light on, or at the very least hint at, certain additional facts or circumstances that, if properly alleged in an amended pleading, would suffice to state plausible claims. *See, e.g., Graham v. Macy's, Inc.*, 2016 WL 354897 at *10 (S.D.N.Y. Jan. 28, 2016) (observing that pro se litigant had been permitted opportunity to amend, at least in part, because her motion papers contained new allegations that "begin to—although they do not fully—remedy the deficiencies in her Complaint").

But there is nothing about the facts alleged in Edwards's pleading, or the additional facts included in her opposition memorandum, that suggest one or more of her § 1983 claims might be viable. Accordingly, leave to amend those claims would be futile under the circumstances presented in this case.

### D. State Law Claims

Notably, Edwards includes references to "New York Education Law" and the "Public Health Law," Pl.'s Opp'n at 9, as well as more generalized references to "emotional distress," "fraud," and "educational disruption," *id*. at 11. However, since plaintiff's federal claims will be dismissed and she will not be given leave to replead, the Court declines to exercise supplemental jurisdiction over any state law claims that might be found in her pleading. *See, e.g., Kurian v. Forest Hills Hosp.*, 962 F. Supp. 2d 460, 471 (E.D.N.Y. 2013) ("Having dismissed the Plaintiff's only federal claim, and given the early stage of this litigation, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims."). Accordingly, those claims are dismissed without prejudice to renew in an appropriate state forum. *See* 28 U.S.C. § 1367(c)(3).

## V. **CONCLUSION**

A careful review of Edwards's pleading and responsive submissions fails to give any indication that she could state a plausible § 1983 claim against either named defendant. Accordingly, plaintiff's complaint must be dismissed.

Therefore, it is

ORDERED that

1. Defendants' motion to dismiss is GRANTED; and

2. Edwards's complaint is DISMISSED.

The Clerk of the Court is directed to enter a judgment accordingly and close the file.

IT IS SO ORDERED.

Dated: July 24, 2019
      Utica, New York.

United States District Judge